UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PAM JESPERSEN,

                     Plaintiff,

     v.

METRO WEST AMBULANCE
SERVICE, INC.,

                     Defendant.

No. CV05-797-MO

OPINION AND ORDER

**MOSMAN, J.,**

     Plaintiff Pam Jespersen filed this action against her former employer, Metro West Ambulance Service, Inc. ("Metro West"), alleging she was discriminated against because of gender and because she invoked the worker's compensation system. Currently before me is Metro West's motion for summary judgment (#33) on both claims. Because I find material issues of disputed fact exist, I deny the motion.

**Background**

     Viewing the facts in the light most favorable to the non-movant, here Ms. Jesperson, the record reveals the following. Metro West provides non-emergency wheelchair transport services and emergency ambulance services in Washington County, Oregon. Ms. Jespersen began working for Metro West as an EMT in 2001. Initially, she worked in the wheelchair department, but within a year she transferred to the ambulance department. Ms. Jespersen planned to become a licensed paramedic, and she took classes in furtherance of this goal while employed. At one

PAGE 1 - OPINION AND ORDER

point, Metro West had a Paramedic Apprentice Program that provided financial assistance for employees taking classes to obtain their paramedic certification. Ms. Jespersen was not admitted into this program.

In early 2004, Ms. Jespersen was taking some prerequisite classes and had been accepted into a paramedic certification program to start in the Fall of 2004. In March 2004, she injured her ankle while at work. This was her third work-related injury, and as she had done before, she filed a worker's compensation claim, which defendant accepted, and she returned to work. In April, she sustained another injury at work, and due to her physical therapy requirements and work schedule, she was unable to complete her prerequisite classes.

Ms. Jespersen's initial supervisor in the ambulance department was Jan Lee. Ms. Lee gave Ms. Jespersen positive performance evaluations in January 2003 and 2004. In March 2004, shortly after Ms. Jespersen was injured, Jason Rogers became her supervisor. Ms. Jespersen and Mr. Rogers had very little contact, but he noted in May: "Things seem to be going well."

Ms. Jespersen was never told that attending classes in pursuit of paramedic certification was a condition of her employment. However, Mr. Rogers requested Ms. Jespersen verify that she was currently enrolled in school. Ms. Jespersen did not provide such verification. Rather, in June 2004, she informed Mr. Rogers that due to her injuries, she was unable to finish the prerequisite classes. She also told him that her work and school schedules would likely be further disrupted due to her doctor's recommendation that she have surgery on her injured ankle. Less than a week after this conversation, Mr. Rogers and Larry Boxman, Metro West's Operations Manager, met with Ms. Jespersen, and on Mr. Rogers' recommendation, Ms. Jespersen was terminated. At that time, she was told she was being terminated for failure to

PAGE 2 - OPINION AND ORDER

attend school. She was also given three write-ups related to incidents allegedly occurring several weeks earlier, and thereafter additional write-ups were placed in her personnel file.

Ms. Jespersen alleges Metro West treated her male counterparts more favorably. Specifically, she asserts: (1) male employees who suspended their studies were not terminated, (2) male employees were given negative performance evaluations, or write-ups, near the time of the relevant event so as to allow them to correct their behavior whereas she was not informed of any problems until she was terminated and thus was not given a chance to correct her behavior, and (3) she received write-ups for tardiness whereas male employees who were more frequently tardy did not.

## Discussion

I.    Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of "pointing out" the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). This burden is met by showing an absence of evidence to support the non-movant's case. *Id.* In order to defeat summary judgment, the non-moving party must then set forth "'specific facts showing there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id.* (citation omitted).

PAGE 3 - OPINION AND ORDER

II.    <u>Gender Discrimination</u>

Ms. Jespersen asserts she was discriminated against on the basis of her gender.[1] The *McDonnell Douglas* burden-shifting analysis applies to this claim. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this analysis, Ms. Jespersen must establish a prima facie case of discrimination by showing: "(1) [s]he belongs to a protected class; (2) [s]he was qualified for the position; (3) [s]he was subject to an adverse employment action; and (4) similarly situated individuals outside h[er] protected class were treated more favorably." *Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1123 (9th Cir. 2000). If she establishes a prima facie case, the burden of production, but not persuasion, shifts to Metro West to proffer a "legitimate, nondiscriminatory reason for the challenged action." *Id.* at 1123-24. If Metro West proffers such a reason, Ms. Jespersen must demonstrate it is pretextual "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.*

The Ninth Circuit has "set a high standard for the granting of summary judgment in employment discrimination cases." *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1410 (9th Cir. 1996). Indeed, "the requisite degree of proof necessary to establish a prima facie case for Title VII . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Chuang*, 225 F.3d at 1124 (internal quotations and citation omitted). And even though "the mere existence of a prima facie case, based on the minimum

---

[1] Ms. Jespersen plead a federal Title VII claim and a state-law gender discrimination claim in her complaint. As the Ninth Circuit has held, courts construe discrimination claims arising under Oregon law the same as Title VII claims. *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1437 n.2 (9th Cir. 1993). Thus, these claims will be treated the same for purposes of analysis.

evidence necessary to raise a *McDonnell Douglas* presumption, does not preclude summary judgment, the plaintiff who has established a prima facie case need produce very little evidence of discriminatory motive to raise a genuine issue of fact as to pretext." *Warren v. City of Carlsbad*, 58 F.3d 439, 443 (9th Cir. 1995) (internal quotation marks and citations omitted). Thus, "[o]nce a prima facie case is established . . . summary judgment for the defendant will ordinarily not be appropriate on any ground relating to the merits because the crux of a Title VII dispute is the elusive factual question of intentional discrimination." *Id.* However, the plaintiff cannot simply rely on generalizations to show pretext, but must produce "specific, substantial evidence." *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996). This burden is satisfied where the plaintiff identifies "facts that either directly show a discriminatory motive or show that the [employer's] explanation . . . is not credible." *Warren*, 58 F.3d at 443.

    Here, Ms. Jespersen establishes a prima facie case of gender discrimination by showing that while she was told she was being terminated for failing to attend classes in pursuit of a paramedic license, male employees who stopped attending such classes were not terminated. Additionally, she produced facts showing that she was treated differently than male employees in relation to negative performance write-ups. In response, Metro West asserts that it terminated Ms. Jespersen because she suspended her schooling in violation of her employment requirements, because she was dishonest about her schooling status, and because of performance issues.

    In attempting to show pretext, Ms. Jespersen proffers statements from Metro West employees suggesting it never had a policy or requirement that employees work towards paramedic certification. Additionally, she argues that unlike male employees, she was never

PAGE 5 - OPINION AND ORDER

made aware of any performance problems prior to her termination. Further, when she was terminated, Ms. Jespersen was told only that she was being terminated due to her failure to attend school. Metro West's two additional explanations arose in the context of this litigation. Mr. Rogers stated in his deposition the reason he did not consider disciplinary action other than termination was because "[Ms. Jespersen's] performance at that point hadn't warranted that." Rayburn Decl., Ex. 2 at 55. Likewise, the concern about Ms. Jespersen's forthrightness arose in Mr. Boxman's deposition, as well as the pleadings on this motion. *Id.*, Ex. 1 at 36; Def.'s Mem. in Supp. of Mot. for Summ. J. at 2. Even though not all instances of shifting explanations create an inference of pretext, where a legitimate, non-discriminatory reason proffered after litigation is initiated is "such a straightforward [explanation] . . . that one might expect [the employer] would have mentioned it if it really were the explanation," there is sufficient evidence to create an issue of fact. *Lindahl v. Air France*, 930 F.2d 1434, 1438 (9th Cir. 1991). Considering the totality of the circumstances, one could expect that Metro West would have raised its concerns about Ms. Jespersen's performance and forthrightness at the time she was terminated. Thus, I find that Metro West's shifting explanations and the dispute concerning whether school attendance was an employment requirement create a sufficient factual dispute to defeat summary judgment on this claim.

III.  Worker's Compensation Discrimination

To state a worker's compensation discrimination claim, Ms. Jespersen must show that (1) she invoked the worker's compensation system, (2) she was discriminated against "in the tenure or terms of employment", and (3) she was discriminated against because she invoked worker's compensation. *Hardie v. Legacy Health Sys.*, 6 P.3d 531, 536 (Or. Ct. App. 2000), *partially*

*superseded by statute on other grounds as recognized by Lansford v. Georgetown Manor, Inc.*, 84 P.3d 1105 (Or. Ct. App. 2004). To satisfy the third element, an employee must show that "in the absence of the [employer's] discriminatory motive, the employee would have been treated differently." *Id.* at 538. Thus, an employee survives summary judgment where she demonstrates there is a triable issue of fact regarding the employer's motive.

      Ms. Jespersen easily satisfies the first two elements of the prima facie case for summary judgment purposes. As for the third element, again considering the totality of the circumstances, I find that there is an issue of fact to be resolved by the factfinder. Ms. Jespersen is not arguing that Metro West retaliated against her simply because she filed a worker's compensation claim. Rather, she argues she was retaliated against more generally on the basis of her worker's-compensation-covered injury. In support of this theory, she points to the fact that she was terminated less than a week after informing Metro West that she needed surgery as a result of her injury and that her work schedule would likely need to be adjusted. Additionally, she asserts Metro West's negative attitude towards her injury is evidenced by the fact that one of the write-ups she was given was for tardiness for a time when she had a doctor's appointment related to her injury.

      Metro West argues it had legitimate, non-discriminatory reasons for its actions–specifically, that it terminated Ms. Jespersen because she was not attending school and that it gave her the write-up because she failed to provide prior notice of the doctor's appointment. Metro West also argues that its lack of retaliatory motive is evidenced by the fact that Ms. Jespersen had filed several worker's compensation claims, including the one at issue, without any difficulty. Whereas this is certainly relevant evidence for the factfinder to consider,

PAGE 7 - OPINION AND ORDER

Ms. Jespersen is not required to prove that she was retaliated against simply for *filing* a worker's compensation claim. *See Williams v. Freightliner, LLC*, 100 P.3d 1117, 1123 (Or. Ct. App. 2004) (holding summary judgment on worker's compensation discrimination claim not appropriate because employee's evidence suggested she was terminated in part because she reported a worsening of her injury and complained about employer's accommodation). Further, Oregon courts have "emphasized that, after a plaintiff has presented evidence of discrimination, evidence of an employer's nondiscriminatory motive in terminating an employee will not support summary judgment." *Id.* Thus, because I find the totality of the circumstances, especially the close temporal proximity between Ms. Jespersen reporting that she needed surgery and her termination, create an inference of discrimination, a genuine issue of fact exists sufficient to defeat summary judgment.

## Conclusion

For the reasons discussed above, I find that there are genuine issues of material fact for the factfinder to resolve concerning Ms. Jespersen's claims for gender discrimination and worker's compensation discrimination such that Metro West is not entitled to judgment as a matter of law. Metro West's motion for summary judgment (#33) is DENIED.

IT IS SO ORDERED.

DATED this   20th   day of April, 2006.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Court